```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BOBCAR MEDIA, LLC,                              :
                                                :
                              Plaintiff,        :
                                                :            16-CV-885 (JPO)
              -v -                              :
                                                :            OPINION AND ORDER
AARDVARK EVENT LOGISTICS, INC.,                 :
                                                :
                              Defendant.        :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiff Bobcar Media, LLC ("Bobcar") initiated this action on February 4, 2016, and filed the operative Second Amended Complaint on April 20, 2016, alleging patent infringement under 35 U.S.C. § 271, trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125, and unfair competition under New York law. (Dkt. No. 12 ("SAC").) Defendant Aardvark Event Logistics, Inc. ("Aardvark") moves to dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Aardvark's motion is denied.

**I.    Background**

The following facts are taken from the SAC and are presumed true for the purposes of this motion.

Bobcar is a company that owns technology and designs for promotional vehicles. (SAC ¶ 7-8.) Bobcar owns three utility patents and three design patents in connection with its promotional vehicles: U.S. Patent Nos. 7,942,461 ("the '461 patent"); 8,220,854 ("the '854 patent"); 8,690,215 ("the '215 patent"); D652,353 ("the '353 patent"); D678,823 ("the '823 patent"); D736,675 ("the '675 patent"). (*Id.* Exs. 1-6.) Each utility patent is entitled "Method

1

and Apparatus for Selling Consumer Products," and each design patent is entitled "Promotional Vehicle."

Bobcar also claims that it has rights to the trade dress of its promotional vehicle designs, which it describes as:

> [A] promotional vehicle having a compact cab in the front, and a compact showroom in back, the showroom having substantially rectangular or square panels on the left and rights sides and rear in the closed position, the vehicle having a configuration in which those panels are raised above the showroom and above the height of the front cab in an open position, the showroom being open to the public on three sides when the panels are in the open position, providing an open air showroom which is used to promote goods or services displayed in the showroom, wherein the promotional vehicle includes a colorful front cab and colorful back, including a colorful coordinated theme extending the entire length of the vehicle from front to back and corresponding to the brand or type of goods or services in the showroom, and with the vehicle having advertising or promotional materials on the panels visible in the open and closed positions and corresponding to the rand or type of goods or services in the showroom.

(*Id.* ¶ 15.) Bobcar includes with its complaint multiple photographs of its promotional vehicles. (*Id.* Ex. 7.) Bobcar claims that its trade dress is non-functional, inherently distinctive, and that it was the first to introduce this combination and arrangement of features for a promotional vehicle into interstate commerce. (*Id.* ¶¶ 16-18, 21.) Moreover, Bobcar claims that its trade dress has acquired distinctiveness through its "expenditures of over a million dollars promoting and popularizing its trade dress," "industry recognition," "media coverage," "sales success," "approximately eight years of exclusive use," and "recognition . . . and the good will associated therewith." (*Id.* ¶ 20.)

Bobcar alleges that Aardvark's "Aardy" promotional vehicle—pictures of which Bobcar attaches to the SAC—infringes Bobcar's patents. (*Id.* ¶ 30, Ex. 8.) In particular, Bobcar claims

that Aardvark's vehicles infringe at least claim 1 of the '461,[1] '854,[2] and '215[3] utility patents and the single claim of the '353, '823, and '675 design patents. (*Id.* ¶ 31, 43.) At bottom, Bobcar claims that Aardvark's "accused design is virtually identical, if not identical, to [Bobcar]'s patented designs." (*Id.* ¶ 51.)

---

[1] Claim 1 of the '461 patent recites: "An article of manufacture, comprising: (a) a self-propelled moving vehicle, said self-propelled moving vehicle comprising a cab and a showroom, said showroom being provided behind said cab; (b) said showroom comprising a frame and a display platform, said frame and display platform defining an internal display area; (c) said self-propelled moving vehicle comprising a series of panels affixed to said frame, said series of panels comprising a panel on the left side of said showroom, a panel on the right side of said showroom, and a panel at the rear of said showroom; (d) said panels having a front side and a back side, wherein advertising is provided on at least one of said sides of at least one of said panels to promote a product or service to consumers; (e) wherein each of said panels is movable, such that said panels have a lowered position and a raised position; (f) wherein said series of panels surround said showroom on three sides when said panels are in said lowered position; (g) wherein said display platform is open to the air on at least three sides when said series of panels are all in said raised position, such that a consumer can reach in from the left side, right side, and rear of said showroom to touch any products positioned on said display platform; and, (h) wherein advertising is provided on said front of at least one of said panels when said panels are in said raised position, such that said panel serves as a vertical billboard above said display platform and above said roof of said showroom."

[2] Claim 1 of the '854 patent recites: "An article of manufacture, comprising: (a) a self-propelled moving vehicle, said self-propelled moving vehicle comprising a cab and a showroom, said showroom being provided behind said cab; (b) said showroom comprising a display area; (c) said showroom further comprising a series of panels, said series of panels comprising a panel on the left side of said showroom, a panel on the right side of said showroom, and a panel at the rear of said showroom; (d) wherein each of said panels is movable, such that each of said panels has a closed position and an open position; and (e) wherein said display area is open to the air when one or more of said panels is in said open position, such that a consumer can reach in to touch products positioned in said display area."

[3] Claim 1 of the '215 patent recites: "An article of manufacture, comprising: (a) a self-propelled moving vehicle, said self-propelled moving vehicle comprising a cab and a showroom, said showroom being provided behind said cab; (b) said showroom comprising a display area; (c) said showroom further comprising a series of panels, said series of panels comprising a panel on the left side of said showroom, a panel on the right side of said showroom, and a panel at the rear side of said showroom; and, (d) wherein each of said panels is movable, such that each of said panels has a closed position and an open position."

In the lead-up to this litigation, Bobcar and Aardvark corresponded about Aardvark's alleged infringement. Starting on December 21, 2015, counsel for Bobcar wrote a series of three letters to Aardvark, notifying Aardvark of Bobcar's intellectual property and alleging infringement of it; Aardvark responded to the first two of these letters but not the third. (*Id.* ¶¶ 63-76, Ex. 9.) Bobcar alleges that for the duration of this correspondence, Aardvark claimed non-infringement, but failed to support this position with detailed justification. (*Id.*)

Bobcar filed suit on February 4, 2016, and filed the operative Second Amended Complaint on April 20, 2016. Bobcar asserts three claims against Aardvark: for patent infringement, for trade dress infringement under the Lanham Act, and for unfair competition under New York law. (*Id.* ¶¶ 93-131.) Bobcar seeks both damages and injunctive relief. (*Id.* ¶¶ 132-36.)

## II. Legal Standard

To determine whether a patent pleading survives a Rule 12(b)(6) motion to dismiss, the Court applies Second Circuit law and follows the pleading standard set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4] *See Anchor Sales & Mktg., Inc. v. Richloom Fabrics Grp., Inc.*, No. 15 Civ. 4442, 2016 WL 4224069, at *3 (S.D.N.Y. Aug. 9, 2016); *see also Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378-79 (Fed. Cir. 2005) ("The Federal Circuit applies its own law with respect to

---

[4] Form 18, provided in an appendix to Rule 84 of the Federal Rules of Civil Procedure, formerly governed the pleading standards for claims of patent infringement. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012). However, with the elimination of Form 18 in the amendments to the Federal Rules effective December 1, 2015, the plausibility pleading requirement of *Twombly* and *Iqbal* became the operative standard for pleading patent infringement.

issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of the regional circuits on non-patent issues.").

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks omitted).

### III.  Discussion

Aardvark moves to dismiss the SAC in its entirety. The Court addresses in turn each of Bobcar's claims: patent infringement; trade dress infringement; and unfair competition.

#### A.  Patent Infringement

Aardvark first challenges the sufficiency of Bobcar's patent infringement claim. Aardvark argues that Bobcar's allegations are mere conclusory statements of liability and fail to adequately allege infringement of the utility patents or the design patents, and also that Bobcar fails to allege willful infringement. (Dkt. No. 14 at 5-13.)

There are "five elements of a patent infringement pleading, to (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (citing *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000));

*see also Digigan, Inc. v. Ivalidate, Inc.*, No. 02 Civ. 420, 2004 WL 203010, at *4 (S.D.N.Y. Feb. 3, 2004) (applying the *Phonometrics* standard).

### 1. Utility Patents

As regards each of the utility patents, Bobcar has satisfied each of the five elements required to plead patent infringement. *See Hall*, 705 F.3d at 1362. First, Bobcar alleges ownership of each of the patents. (SAC ¶¶ 7-11.) Second, Bobcar names Defendant Aardvark. (*Id.* ¶ 6.) Third, Bobcar clearly identifies the allegedly infringed patents. (*Id.* ¶¶ 29-30.) Fourth, Bobcar describes the means by which the defendant allegedly infringes. (*Id.* ¶¶ 31-41.) In particular, Bobcar alleges infringement of claim one of each of the utility patents by describing with specificity the infringing aspects of Aardvark's products. As regards Claim 1 of the '461 patent, Bobcar alleges that each of the accused products is (a) a self-propelled moving vehicle with a cab and a showroom (*id.* ¶ 36), (b) with the showroom comprising a frame and display platform (*id.* ¶ 37), (c) made up of a series of panels (*id.* ¶ 38), (d) each panel with a front and back side, at least one of which contains promotional messaging (*id.*), (e) which are movable (*id.*), (f) and surround the showroom when in the down position (*id.*), (g) with the showroom open on three sides (*id.* ¶ 39), and (h) with advertising on the panels when they are raised (*id.* ¶ 40). This series of allegations, coupled with the pictures of the allegedly infringing products (Dkt. No. 12-8), adequately alleges infringement of each aspect of Claim 1 of the '461 patent. These allegations also suffice to allege infringement of Claim 1 of the '854 patent and the '215 patent. *See supra* notes 1-3. Aardvark's arguments to the contrary that Bobcar fails to explain "*how*" their Aardy promotional vehicle satisfies the claims of the asserted patents are thus unavailing. Fifth and finally, Bobcar points to the sections of the patent law invoked by its claims. (SAC ¶ 136.)

Bobcar also alleges, "[a]lternatively or additionally," infringement under the doctrine of equivalents. (*Id.* ¶ 42.) "Infringement can be established in either of two ways: through direct infringement (which is also known as literal infringement), or through the doctrine of equivalents." *Baseball Quick, LLC v. MLB Advanced Media L.P.*, No. 11 Civ. 1735, 2014 WL 6850965, at *4 (S.D.N.Y. Dec. 4, 2014) (citing *J & M Corp. v. Harley–Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001)), *aff'd*, 623 F. App'x 1012 (Fed. Cir. 2015). The doctrine of equivalents provides that "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)). The question for the doctrine of equivalents is "whether the accused device performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014).

Here, as is made clear by the similarities discussed above in the context of literal infringement, Bobcar has adequately alleged that Aardvark's promotional vehicles are sufficiently equivalent so as to also sustain a claim under the doctrine of equivalents. Bobcar has adequately pleaded infringement of the utility patents.

### 2. Design Patents

Next, Aardvark contends that Bobcar fails to state a claim for infringement of the single claim of each of the '353, '823 and '675 design patents.

The Court applies the "ordinary observer" test to determine whether a product infringes a patented design. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). This

requires Bobcar to demonstrate that an ordinary observer "would be deceived into believing that the accused product is the same as the patented design." *Id.* "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).  In applying this test, the Court focuses on the overall appearance of the design, rather than particular elements, and often undertakes a side-by-side visual comparison. *Crocs*, 598 F.3d at 1302.

To that end, some images are helpful.  First, an image of one of Bobcar's patented promotional vehicles:



(SAC ¶ 15, Ex. 7.)

Next, an image from each of the three allegedly infringed design patents.

The '353 patent, Figure 1:



The '823 patent, Figure 1:



And the '675 patent, Figure 1:



And third, images of two of Aardvark's allegedly infringing vehicles:



(SAC ¶ 30, Ex. 8.)

Applying the ordinary observer test, the Court concludes that these designs are sufficiently similar so as to deceive an ordinary observer. In defense, Aardvark points to others of its products—sharing the name "Aardy"—that look different from the ones that Bobcar depicts in its complaint; but this does nothing to imply that the products Bobcar does identify are not infringing. (Dkt. No. 14 at 10.) Bobcar's allegations that the similarity is sufficient to deceive an ordinary observer (SAC ¶¶ 45-50), and that the designs are "virtually identical" (*id.* ¶ 51), are plausible. At this stage, that is enough. *See, e.g.*, *Hall*, 705 F.3d at 1362-64 (reversing dismissal where plaintiff provided a copy of its patent and a picture of the allegedly infringing product along with an allegation that the accused product was identical to the patented design).

### 3. Willful Infringement

Aardvark also argues that Bobcar fails to plead willful infringement justifying enhanced damages, applying the standard set out in *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

Section 284 of the Patent Act allows courts to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Mere days after briefing on the instant motion was completed, the Supreme Court rejected the prevailing test for enhanced damages due to willful

10

infringement. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) (abrogating *Seagate*, 497 F.3d at 1371). Under the erstwhile *Seagate* test for willfulness, a patentee was required to show by clear and convincing evidence "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and that risk of infringement "was either known or so obvious that it should have been known to the accused infringer." *Seagate,* 497 F.3d at 1371. In *Halo*, the Supreme Court rejected the *Seagate* test in favor of something of an un-test, devolving greater discretion to the district courts to determine whether a given case is an "egregious case[] of misconduct beyond typical infringement," thereby meriting enhanced damages. *Halo*, 136 S. Ct. at 1935. In doing so, the Court noted that "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless," *id.* at 1933, but also that "[t]he sort of conduct warranting enhanced damages has been variously described as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant or . . . characteristic of a pirate," *id.* at 1932. Additionally, the Court replaced *Seagate*'s clear and convincing standard with a preponderance of the evidence standard. *Id.* at 1934.

*Halo*'s effect on the pleading standard for willful infringement remains unclear. *Compare John Keeler & Co. v. Heron Point Seafood, Inc.*, No. 14 Civ. 1652, 2016 WL 6839615, at *4 n.2 (N.D. Ohio July 8, 2016) ("[*Halo*], in which the Supreme Court abrogated the two-part test for proving willful infringement, may also affect the pleading standard."), *with Nanosys, Inc. v. QD Vision, Inc.*, No. 16 Civ. 01957, 2016 WL 4943006, at *8 (N.D. Cal. Sept. 16, 2016) ("*Halo* did not address pleading standards at the motion to dismiss stage."). At a minimum, the discretion that *Halo* confers on district courts to award enhanced damages based on the nature of

the specific misconduct in a given case counsels hesitation before dismissing allegations of willfulness at the pleading stage.

In support of its claim for willful infringement, Bobcar describes multiple letters sent to Aardvark describing the alleged infringement. (SAC ¶¶ 63-78.) For example, Bobcar's December 21, 2015, letter named particular patents at issue, identified Aardvark's allegedly infringing products, and informed Aardvark that Bobcar believed Aardvark to be using Bobcar's patents without authorization. (*Id.* Ex. 9.) Bobcar alleges that after receiving these letters, Aardvark never claimed non-infringement—instead arguing that the patents were invalid—and continued to engage in the allegedly infringing activities. (*Id.* ¶¶ 77-78.)

These allegations plausibly suggest that Aardvark's actions were subjectively willfull— which is enough under *Halo*. *Compare Halo*, 136 S. Ct. at 1933 (finding subjective willfulness sufficient to justify enhanced damages), *with Seagate,* 497 F.3d at 1371 (requiring a showing of objective recklessness). It is possible that further development of the facts of this case may reveal that it is not an "egregious case" justifying enhanced damages, but at the pleading stage, especially in light of *Halo*, Bobcar has carried its burden.

**B.     Trade Dress Infringement**

Aardvark next argues that the Court should dismiss Bobcar's allegations of trade dress infringement under the Lanham Act.

The Lanham Act provides for the protection of unregistered trade dress, which refers to the design or packaging of a product. 15 U.S.C. § 1125; *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000). In order to state a claim for trade dress infringement, a plaintiff must show that (1) the allegedly infringing feature is "not functional," 15 U.S.C. § 1125(a)(3), (2) there is a likelihood of confusion between the original and infringing goods, *id.* § 1125(a)(1)(A),

and (3) the trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning, *Wal-Mart*, 529 U.S. at 210.

### 1. Non-functionality

First, Bobcar has adequately pleaded non-functionality. "In a civil action for trade dress infringement . . . the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). "[T]rade dress is functional, and thus not protectable, when it is 'essential to the use or purpose of the article.'" *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 620 (2d Cir. 2008) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001)). "[T]he absence of alternative constructions performing the same function . . . renders the feature functional." *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1148 (2d Cir. 1987).

Bobcar here describes its trade dress with specificity and in terms that adequately support non-functionality.[5] (SAC ¶¶ 15, 21-25.) *See Luv n' Care, Ltd. v. Regent Baby Prod. Corp.*, 986 F. Supp. 2d 400, 405–06 (S.D.N.Y. 2013) ("[A] Lanham Act claimant must describe its protectable interest with some clarity—it must offer 'a precise expression of the character and scope of the claimed trade dress.'" (quoting *Yurman Design*, 262 F.3d at 117)). Bobcar describes its trade dress as requiring a "compact" cab and showroom, with "rectangular or square panels," a "colorful" cab and back, with a "colorful coordinated theme extending the entire length of the vehicle . . . corresponding to the brand or type of goods or services in the

---

[5] Aardvark argues that Bobcar has not "offer[ed] a precise expression of the character and scope of the claimed trade dress." (Dkt. No. 14 at 15 (quoting *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. App'x 389, 391 (2d Cir. 2003).) However, Bobcar's extended description of its trade dress (SAC ¶ 15), identifies the trade dress with precision, focusing on "specific elements" of the design rather than giving a "vague and overbroad articulation of the trade dress elements," *Sherwood 48 Assocs.*, 76 Fed. App'x at 391 (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

showroom." (*Id.* ¶ 15.) Though Aardvark argues that Bobcar is merely seeking trade dress protection for functional features already covered by its patents (Dkt. No. 14 at 17), these non-functional features do not appear in the description of Bobcar's patents. Moreover, these design features are not essential to the purpose of Bobcar's promotional vehicles—its advertising function could be performed by numerous other constructions or configurations. *See Cartier*; 294 F. App'x at 620; *Brandir*, 834 F.2d at 1148. Bobcar has thus adequately pleaded non-functionality.

### 2. Likelihood of Confusion

Aardvark does not specifically challenge Bobcar's pleading of likelihood of confusion, instead devoting its argument on this claim to the contention that Bobcar has not adequately identified its trade dress or pleaded distinctiveness or non-functionality. (Dkt. No. 14 at 14-18; Dkt. No. 18 at 4-6.) In any event, Bobcar has specifically and sufficiently alleged likelihood of confusion. (SAC ¶¶ 54-56, Ex. 7, Ex. 8.) *See Nat. Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005) (describing the factors considered in determining likelihood of confusion).

### 3. Distinctiveness

To plead distinctiveness of its product design, Bobcar must show that its design is either inherently distinctive or has "acquired secondary meaning giving it distinctiveness to the consumer." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1000 (2d Cir. 1997). To determine whether the trade dress has secondary meaning,[6] the Court considers six factors:

---

[6] Bobcar also claims in its complaint that its trade dress is inherently distinctive. (SAC ¶ 18.) However, it gives the Court little to go on in order to establish that the dress is sufficiently suggestive, arbitrary, or fanciful so as to necessarily deem the dress inherently distinctive. *See Fun-Damental Too*, 111 F.3d at 1000 ("[T]rade dress is classified on a spectrum of increasing distinctiveness as generic, descriptive, suggestive, or arbitrary/fanciful. Suggestive

"(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Cartier*, 294 Fed. App'x at 618 (quoting *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1070 (2d Cir. 1995)). "In assessing the existence of secondary meaning, no 'single factor is determinative,' and every element need not be proved. Each case, therefore, must be resolved by reference to the relevant factual calculus." *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) (internal citation omitted) (quoting *Am. Footwear Corp. v. Gen. Footwear Co.*, 609 F.2d 655, 663 (2d Cir. 1979)).

Bobcar addresses all but one of these factors (consumer studies), each of which supports alleged distinctiveness. Bobcar explains that it has spent over one million dollars "promoting and popularizing its trade dress." (SAC ¶ 20.) Bobcar describes external recognition and media coverage, including the 2015 EX Silver Award for Best Mobile Marketing Program. (*Id.*) Bobcar claims sales success of "millions of dollars" in revenue from its trade dress and its use in marketing programs by many major companies, including Samsung, T-Mobile, and Verizon. (*Id.*) Finally, Bobcar states that it has used the trade dress exclusively for about eight years and the Aardvark's alleged plagiarism trades off the good will associated with Bobcar's trade dress. (*Id.*) Bobcar has thus satisfied all but one of the *Cartier* factors, namely, consumer studies. In light of the recognition that the distinctiveness inquiry is a "factual matter," Bobcar has alleged enough at this stage. *Cartier*, 294 Fed. App'x at 618 (quoting *Mana Prods.*, 65 F.3d at 1070).

Bobcar has described its trade dress claim with specificity and has plausibly pleaded non-functionality, likelihood of confusion, and distinctiveness. Its claim therefore survives.

---

and arbitrary or fanciful trade dress are deemed inherently distinctive and thus always satisfy the first prong of the test for protection.").

C.  **Unfair Competition**

Unfair competition is a "capacious tort." *Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 49 F. Supp. 3d 385, 430 (S.D.N.Y. 2014), *aff'd*, 638 F. App'x 43 (2d Cir. 2016). "The essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995).

Aardvark contends that Bobcar has failed to state a claim for unfair competition. But Bobcar's detailed complaint belies this argument. Specifically, Bobcar describes how Aardvark "misappropriated Bobcar's trade dress and advertising and marketing ideas and program, by use of Bobcar's promotional vehicle trade dress . . . in conjunction with an infringing vehicle," and continued to do so even after Bobcar had notified it of the alleged wrongful conduct. (SAC ¶ 124; *see id.* ¶¶ 53-76.) To hear Bobcar tell it, Aardvark was consciously misappropriating Bobcar's ideas and labor and using them to serve Bobcar's own customers. (*Compare id.* ¶ 124 (describing an infringing Aardvark vehicle promoting Samsung and T-Mobile), *with id.* ¶ 20 (describing Samsung and T-Mobile as customers of Bobcar).) Whatever the broad metes and bounds of the law of unfair competition may be, Bobcar has plausibly alleged conduct by Aardvark that falls within them.[7]

---

[7] Aardvark also argues that Bobcar's state-law claim is preempted by federal law as it is "based solely on the underlying allegations of patent infringement." (Dkt. No. 14 at 18-20.) But in support of its unfair competition claims, Bobcar alleges conduct that is factually distinct from that supporting its patent infringement claims, including misappropriation of Bobcar's advertising and marketing projects. (SAC ¶¶ 122-124.) And as regards Bobcar's claim of trade dress infringement under the Lanham Act, such claims are not preemptive of state-law unfair competition. See *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 92 n.15 (2d Cir. 1984) (The Lanham act is "cumulative of, and does not preempt, the broader consumer-oriented remedies provided by the common law of unfair competition." (quoting *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir. 1980) (internal quotation marks omitted)).

16

### IV.     Conclusion

For the reasons discussed above, Defendant's motion to dismiss is DENIED.  Aardvark shall file its answer to Bobcar's claims on or before January 25, 2017.

The Clerk of Court is directed to close the motion at Docket Number 13.

SO ORDERED.

Dated: January 4, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge