UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOBCAR MEDIA, LLC,

                    Plaintiff,

-v-

AARDVARK EVENT LOGISTICS, INC.,

                    Defendant.

16-CV-885 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Bobcar Media, LLC ("Bobcar") initiated this action on February 4, 2016, against Defendant Aardvark Event Logistics, Inc. ("Aardvark"). (Dkt. No. 1.) In the operative Second Amended Complaint, filed April 20, 2016, Bobcar alleges patent infringement under 35 U.S.C. § 271, trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under New York law. (Dkt. No. 12 ("SAC") ¶¶ 93–131.) Aardvark has also asserted counterclaims against Bobcar, seeking a declaratory judgment that the six patents on which Bobcar bases its suit are invalid, that Aardvark did not infringe Bobcar's patents or trade dress, and that Aardvark did not engage in unfair competition. (Dkt. No. 22 at 22–31.)

      On September 7, 2018, Aardvark moved to dismiss the patent infringement claims in the Second Amended Complaint for lack of standing.[1] (Dkt. No. 101.) Specifically, Aardvark

---

[1] Aardvark invokes Federal Rule of Civil Procedure 12(b)(1) as the basis for its motion. Because Aardvark has already filed an Answer (Dkt. No. 22), though, the Court construes this as a motion for judgment on the pleadings under Rule 12(c), premised on a lack of subject-matter jurisdiction. *See Goodwin v. Solil Mgmt. LLC*, No. 10 Civ. 5546, 2012 WL 1883473, at *1 (S.D.N.Y. May 22, 2012). Ultimately this is a distinction without a difference, however, because "[w]here a Rule 12(c) motion asserts that a court lacks subject matter jurisdiction, the motion is governed by the same standard that applies to a Rule 12(b)(1) motion." *Xu v. City of New York*, No. 08 Civ. 11339, 2010 WL 3060815, at *2 n.2 (S.D.N.Y. Aug. 3, 2010).

argues that Bobcar did not own the patents at issue at the time it filed suit, and that Bobcar thus cannot sue for patent infringement. (Dkt. No. 102 at 1.)

Based on the evidence submitted by the parties, the Court agrees that Bobcar has not sufficiently demonstrated that it possessed standing to initiate this action. Therefore, at this point in time, the Court is inclined to grant Aardvark's motion. However, the Court will delay ruling on the motion to dismiss for ten days, to give Bobcar the opportunity to either file a sur-reply to the motion to dismiss, or move to add the original inventors, David Hazan and Benjamin Cohen, as plaintiffs pursuant to Rule 21.

## I. Background

### A. Procedural History

Bobcar filed the operative Second Amended Complaint in this action on April 20, 2016. (Dkt. No. 12.) Aardvark moved to dismiss the Second Amended Complaint under Rule 12(b)(6), and the Court denied the motion on January 4, 2017. (Dkt. Nos. 13 & 21.) Aardvark subsequently filed its Answer, which asserted counterclaims seeking a declaratory judgment in Aardvark's favor on each of Bobcar's claims. (Dkt. No. 22 at 22–31.)[2] Fact discovery in this action closed on August 17, 2018. (Dkt. No. 99.) The instant motion to dismiss was filed on September 7, 2018. (Dkt. No. 101.) On November 14, 2018, the parties completed their claim construction briefing (Dkt. Nos. 104, 107–108, 110), and a *Markman* hearing before the Court is scheduled for December 19, 2018 (Dkt. No. 109).

### B. Factual Background

The following facts are taken from the operative Complaint and the parties' submissions regarding the motion to dismiss. (*See* SAC; Dkt. Nos. 101–103, 105–106.) Familiarity with the

---

[2] On May 8, 2018, Aardvark moved for sanctions against Bobcar under Rule 11; that motion is pending before the Court. (Dkt. No. 64.)

matter, as set forth in the Court's prior opinion in this case, is presumed. *See Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16 Civ. 885, 2017 WL 74729, at *1–3 (S.D.N.Y. Jan. 4, 2017).

The patent infringement claims in this case involve three utility patents and three design patents relating to Bobcar's promotional vehicles: U.S. Patent Nos. 7,942,461 ("the '461 patent"); 8,220,854 ("the '854 patent"); 8,690,215 ("the '215 patent"); D652,353 ("the '353 patent"); D678,823 ("the '823 patent"); D736,675 ("the '675 patent"). (SAC ¶¶ 9–14.) The first of these, the '461 patent, was issued on May 17, 2011, and lists the inventors as Benjamin Cohen and David Hazan, and the assignee as Bobcar Media, LLC. (Dkt. No. 12-1 at 1.) The other five patents were issued between January 2012 and August 2015, list Cohen and Hazan as the inventors and Bobcar as the assignee, and are related to the '461 patent through a chain of patent applications that are continuations and continuations in part of the '461 patent. (*See* Dkt. Nos. 12-2 through 12-6.)

During fact discovery in this matter, Bobcar did not produce any documents constituting the written assignment of the patents at issue from the inventors (the putative assignors) to the putative assignee, Bobcar. (Dkt. No. 102 at 2; Dkt. No. 103-3 at 26; Dkt. No. 105 at 3.) Counsel for Bobcar, Morris Cohen, represented at a February 14, 2018 telephonic conference before the Court that he "believe[s] there was an assignment document" when the patent applications were filed, and that if a copy of the original written assignment document "still exists" it would have been produced; but counsel was unsure whether "there are still copies of those documents." (Dkt. No. 103-3 at 27.)

David Hazan—inventor of the patents and Bobcar's designated Rule 30(b)(6) witness—was asked about the existence of an assignment document at his Rule 30(b)(6) deposition:

> Q. Is there any other document [other than the face of the patents] that evidences BobCar's ownership of the patents?
> . . .
> A. Is there any other document? There could be one.
> Q. I can't get into this "could be."
> A. I know. I am just saying again I can't pull one out of my pocket for you, but it is possible that we produced one for you.
> . . .
> Q. Is there a written document from the inventors assigning any right, title and interest to BobCar?
> MR. COHEN: Objection. Asked and answered.
> A. I told you I don't have a document at my fingertips, but I am 100 percent sure that we assigned the patents to BobCar Media, LLC.
> Q. Have you ever seen a document?
> A. If there is a document, I have seen it, and I signed it, so I am telling you that I believe that there is a document. I just don't have one at my fingertips to show you a document.
> . . .
> Q. Topic 10 [in the 30(b)(6) notice] requires the identification of any assignment document. You have not identified anything to me, so apparently there is no assignment document.
> MR. COHEN: Objection, mischaracterizes testimony. You should go back and read his testimony.
> Q. Can you identify this document for me?
> MR. COHEN: Objection. Asked and answered.
> A. I answered it. I will answer it again. I can't identify the document for you at the moment.
> Q. This is the moment.
> MR. COHEN: Objection.
> A. I don't have the document.
> Q. Is there any verbal agreement between the inventors of BobCar as to the ownership of this patent?
> . . .
> A. Yes.
> Q. There's a verbal agreement?
> A. Yes. There was definitely a verbal agreement.

(Dkt. No. 103-4 at 210–11, 227–28; Dkt. No. 105-1 at 218–19.)

In addition, accompanying its opposition to the motion to dismiss, Bobcar submitted a declaration from Benjamin Cohen—the other inventor on the patents and the current President of Bobcar (Dkt. No. 105-12 ¶ 1)—regarding the alleged assignment. Cohen avers:

> David Hazan and I both executed a document many years ago assigning to Bobcar all of our rights in the patent applications that we filed, i.e. all our rights to the patents-in-suit. . . . Both of us agreed that our company Bobcar would be the owner of our rights to the patents-in-suit, and we executed that document for the purpose of transferring to Bobcar any and all our rights to the patents-in-suit. . . . There is no question in my mind that our written transfer of our rights to Bobcar was executed many years before the February 2016 filing of suit in this action.

(Dkt. No. 105-12 ¶¶ 4, 6–7.) Bobcar has also submitted "confirmations of assignment" from both Cohen and Hazan, which confirm that the inventors assigned to Bobcar all rights in the patents at issue, and that the "original written assignment" of the patents occurred "prior to April 5, 2011." (Dkt. Nos. 105-9 & 105-10.)

## II.     Legal Standard

Article III's case-or-controversy requirement mandates that "the party invoking federal jurisdiction have *standing*—the personal interest that must exist at the commencement of the litigation." *Haley v. Teachers Ins. & Annuity Ass'n of Am.*, No. 17 Civ. 855, 2018 WL 1585673, at *2 (S.D.N.Y. Mar. 28, 2018) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016)). If a plaintiff cannot demonstrate standing, a court lacks subject-matter jurisdiction over the plaintiff's claims and must dismiss them.

"On a motion to dismiss under Rule 12(b)(1), where evidence relevant to the jurisdictional question is before the court, the court 'may refer to [that] evidence.'" *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 499 (S.D.N.Y. 2017) (alteration in original) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "This evidence may include affidavits, exhibits and declarations, all subject to the familiar standards of admissibility found in [Federal Rule of Civil Procedure] 56." *Id*. The plaintiff bears the ultimate burden of "prov[ing] subject-matter jurisdiction by a preponderance of the evidence." *Kurzon v. Democratic Nat'l Comm.*, No. 16 Civ. 4114, 2017 WL 2414834, at *1 (S.D.N.Y. June 2, 2017)

(quoting *Morrow v. Ann Inc.*, No. 16 Civ. 3340, 2017 WL 363001, at *2 (S.D.N.Y. Jan. 24, 2017)).

## III. Discussion

Aardvark moves to dismiss the patent claims in the Second Amended Complaint, contending that Bobcar lacks standing to claim patent infringement because it did not own the patents at issue when it commenced this action. (Dkt. No. 102 at 1.) Bobcar responds that although it lost the assignment document, it nonetheless possesses standing to assert patent infringement because it can sufficiently demonstrate that an assignment of the patents at issue in fact occurred. (Dkt. No. 105 at 3.)

### A. Standing to Assert Patent Infringement Claims

"Standing to sue for patent infringement derives from the Patent Act, which provides that '[a] patentee shall have remedy by civil action for infringement of his patent.'" *Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549, 553 (S.D.N.Y. 2016) (alteration in original) (quoting *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1031 (Fed. Cir. 2015) (quoting 35 U.S.C. § 281)). An entity that is not the original recipient of a patent is also considered a "patentee" with statutory standing to sue for infringement in its own right if it is the "assignee[]" and current owner of the patent, or an "exclusive licensee[] who w[as] given all substantial rights to the patent." *My First Shades v. Baby Blanket Suncare*, 914 F. Supp. 2d 339, 345 (E.D.N.Y. 2012). Bobcar asserts that it has standing to sue here because it is the assignee of the patents at issue. (Dkt. No. 105 at 1.)[3]

---

[3] In the alternative, Bobcar claims that it is at least an "exclusive licensee" of the patents, and has standing to sue in that capacity. (Dkt. No. 105 at 8–9.) Bobcar is correct that "courts permit exclusive licensees to bring suit in their own name, without joining the patent owner, if the exclusive licensee holds 'all substantial rights' in the patent." *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 290 (S.D.N.Y. 2010). But Bobcar ignores the fact that such "'virtual

It is well established that a patent in an invention is generally issued to and initially owned by the inventor, who may then transfer ownership through an assignment. *See Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 785 (2011); *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). Equally well established, and particularly important in this case, is that "[p]atent ownership cannot be assigned without a 'written instrument documenting the transfer of proprietary rights in the patents.'" *Picture Patents, LLC v. Aeropostale, Inc.*, 788 F. Supp. 2d 127, 137 (S.D.N.Y. 2011) (quoting *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245, 1250 (Fed. Cir. 2000)).

During discovery, Bobcar was unable to produce a written assignment document that transferred ownership in the patents from the inventors—Hazan and Cohen—to their company. (Dkt. No. 106 at 1.) From this evidentiary gap, Aardvark infers that a written assignment was never executed and Bobcar was not the true owner of the patents when it brought this case. (Dkt. No. 102 at 7–8.) Bobcar responds that although it has lost the assignment document, it can prove that an assignment occurred through the testimony of the two inventors and *nunc pro tunc* assignments, corroborated by the patent applications. (Dkt. No. 105 at 4–8). Aardvark contends that this evidence is insufficient.[4] (Dkt. No. 106 at 2–3.)

---

assignments' (i.e., exclusive license agreements that convey all substantial rights) must [*also*] be in writing for a party to have standing to sue in its own name." *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 F. App'x 697, 705 (Fed. Cir. 2008); *see also Vapor Point LLC v. Moorhead*, 832 F.3d 1343, 1351–52 (Fed. Cir. 2016) (O'Malley, J., concurring); *Blumenthal Distrib., Inc. v. Exec. Chair, Inc.*, No. 10 Civ. 1280, 2010 WL 5980151, at *4 (E.D.N.Y. Nov. 9, 2010). This argument in the alternative thus does not relieve Bobcar of the burden of demonstrating that a *written* transfer of ownership in the patents occurred.

[4] Aardvark also briefly contends that Bobcar's inability to produce a written assignment document "alone is dispositive" here. (Dkt. No. 106 at 2.) The Court disagrees. The existence and contents of a document can be proven through secondary evidence. *See* Fed. R. Evid. 1004.

7

In resolving Aardvark's motion to dismiss, the ultimate question for the Court is whether Bobcar has shown, by a preponderance of the evidence, that there was in fact a written assignment of the patents at issue. Aardvark asserts that Bobcar cannot meet its burden, because the evidence on which Bobcar attempts to rely is (1) "inadmissible" and (2) otherwise "deficient," and because (3) even if the Court accepts the evidence Bobcar has put forward, that evidence is insufficient to show that each of the six patents at issue was assigned in writing. (Dkt. No. 106 at 2–4.) The Court agrees that the evidence on which Bobcar relies is inadmissible to prove the contents of the alleged original written assignment; therefore, at this point in time, Bobcar has not proven that a written assignment was executed.

In resolving a motion to dismiss for lack of subject-matter jurisdiction, courts can rely on evidence outside the pleadings only if such evidence would be admissible on summary judgment. *See MMA Consultants*, 245 F. Supp. 3d at 499. Aardvark contends that the evidence relied on by Bobcar should be "deemed inadmissible," because Bobcar has not "offered any evidence that the purported assignment existed, much less was lost." (Dkt. No. 106 at 3.) The basis for this argument is the "best evidence" rule.[5] (Dkt. No. 106 at 2–3 & n.3 (citing *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1320 (9th Cir. 1986); *Allergia, Inc. v. Bouboulis*, No. 14 Civ. 1566, 2017 WL 2547225, at *8–9 (S.D. Cal. June 13, 2017); *Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 329–31 (S.D.N.Y. 2003)).)

"The 'best evidence' rule is codified at Rules 1002 through 1004 of the Federal Rules of Evidence." *Bandler v. BPCM NYC, Ltd.*, No. 12 Civ. 3512, 2014 WL 5038407, at *7 (S.D.N.Y. Sept. 29, 2014) (brackets omitted) (quoting *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*,

---

[5] Although Aardvark does not expressly invoke the "best evidence" rule by name or citation, the content of its argument and case citations indicate that this is clearly the rule of evidentiary admissibility on which Aardvark seeks to rely.

302 F.3d 83, 91 (2d Cir. 2002)). The rule establishes the presumption that "[a]n original writing . . . is required in order to prove its content." Fed. R. Evid. 1002. But it provides that "[a]n original is not required and other evidence of the content of a writing . . . is admissible" under certain conditions, including where "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a). "To satisfy Rule 1004, '[t]he party seeking to prove the contents of the writing must establish a proper excuse for the non-production of the document and that the original did exist.'" *Crawford v. Franklin Credit Mgmt. Corp.*, No. 08 Civ. 6293, 2015 WL 1378882, at *4 (S.D.N.Y. Mar. 26, 2015) (alteration in original) (quoting *Bandler*, 2014 WL 5038407 at *8). And the proponent "must meet this burden by a preponderance of the evidence." *Id.*

Because Bobcar seeks to prove the contents of a written document that it claims was once executed—and, in particular, seeks to prove that the document contained an assignment of all six of the patents here at issue—it would ordinarily need to do so by producing the document itself. Here, though, Bobcar contends that it cannot produce the original assignment document because "the document was lost." (Dkt. No. 105 at 4.) Bobcar's opposition brief states that "[t]he document may still exist somewhere, or it may be lost. With Bobcar's prior move of offices, it has not been found to date." (*Id.* at 4 n.1.) Counsel for Bobcar made similar claims at a teleconference before the Court, stating, "If it still exists, we produced it. . . . I'm just saying that now we haven't gotten any further copies of it." (Dkt. No. 103-3 at 27.)

The loss of a document can clearly be a proper excuse for its non-production. *See Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 127 (2d Cir. 2016) (per curiam). But whether Bobcar lost the assignment document—and did so in good faith—is a "factual predicate[]" which it "must prove by a preponderance of the evidence." *Id.* Statements of counsel at conference or
9

in a brief, of course, are not evidence. *See Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244, 2014 WL 3377105, at *12 (S.D.N.Y. July 9, 2014). And nothing in the declaration, deposition testimony, or confirmation documents on which Bobcar relies addresses what happened to the original assignment document, if it ever existed at all. The Court is left with no evidence on which to conclude that an original assignment document was actually lost.[6]

As such, the "factual predicates" for invoking the Rule 1004 exception are not satisfied here, and the evidence offered by Bobcar is inadmissible to prove the contents of the alleged original assignment document. And because Bobcar has adduced no admissible evidence to prove the contents of the document, it has not proven by a preponderance that it owned the patents at issue and had statutory standing to sue when the case was filed. Therefore, based on the evidence before the Court at this point in time, the Court is inclined to conclude that it lacks subject-matter jurisdiction.

The Court will postpone ruling on Aardvark's motion to dismiss for ten days, however, to give Bobcar the opportunity to file further submissions responding to Aardvark's reply brief (Dkt. No. 106 at 2–3) and addressing issues under the "best evidence" rule.

**B. Adding New Plaintiffs Under Rule 21**

Bobcar's opposition to the motion to dismiss does not address the possibility of adding the inventors of the patents as plaintiffs, in the event that Bobcar is unable to demonstrate standing to initiate the action on its own. However, in support of its motion to dismiss, Aardvark asserts that Bobcar cannot cure any "standing defect by joining the actual owners of the Asserted Patents to this suit." (Dkt. No. 102 at 11.) The Court disagrees.

---

[6] Because the Court concludes that Bobcar has not satisfied the "excuse" predicate of Rule 1004(a), it does not decide whether Bobcar has proven by a preponderance of the evidence another factual predicate: that "the original did exist." *Crawford*, 2015 WL 1378882, at *4 (quoting *Bandler*, 2014 WL 5038407, at *8).

As discussed above, "[p]atent owners, including assignees and exclusive licensees who were given all substantial rights to the patent, may sue alone in their own right." *My First Shades*, 914 F. Supp. 2d at 345. By contrast, "[e]xclusive licensees, with less than all substantial rights to the patent, may sue only if the owner of the patent is joined as a necessary party in the litigation." *Id.* And importantly, such "an exclusive license need not be in writing for the licensee to have standing if the patentee or assignee is also joined." *Id.* at 350 (quoting *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 F. App'x 697, 706 (Fed. Cir. 2008)).

Although Bobcar has not proven the content of the alleged *written* assignment on the evidence adduced, it has proven the existence of a *verbal* agreement. (*See* Dkt. No. 103-4 at 228.) From the representations of the inventors, corroborated by the patent applications, the Court concludes that the inventors at a minimum verbally agreed to transfer all rights in the patents to Bobcar. Such an agreement—an assignment in all but memorialization-by-writing—is the equivalent of an implied exclusive license. As such, Bobcar would have statutory standing to sue for patent infringement if the inventors of the patents were also joined as plaintiffs.

Under Federal Circuit precedent, "an exclusive licensee with less than all substantial rights in the patent [that] did not have the right to sue under the Patent Act at the inception of the lawsuit," can "cure the defect by filing a motion to join the patentee as a plaintiff." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1310 (Fed. Cir. 2003). Indeed, the Federal Circuit has a "practice of endorsing joinder of patent owners, under Rule 21 of the Federal Rules of Civil Procedure, in order to avoid dismissal for lack of standing." *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1385 (Fed. Cir. 2015).

This practice does not run afoul of Article III limits on subject-matter jurisdiction because such an exclusive licensee, with "'the right to exclude others from making, using, and

selling an invention described in the claims of a patent is constitutionally injured by another entity that makes, uses, or sells the invention' and therefore has constitutional standing." *My First Shades*, 914 F. Supp. 2d at 345 (quoting *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001)). Exclusive licensees are "required to join the title holder" only as a matter of prudential standing, in order "to prevent multiple litigations regarding the same patent." *Id.* But "[i]t is sufficient for [prudential] standing purposes that the title holder is eventually added to the suit, even if the title holder was not in the suit originally, because the exclusive licensee meets constitutional standing requirements." *Id.* at 346.

Adding the inventors—David Hazan and Benjamin Cohen—as plaintiffs in this action would thus cure any deficiency in Bobcar's statutory standing at the time it filed the suit. Accordingly, the Court will delay granting Aardvark's motion to dismiss for ten days, in which time Bobcar can move, if it so chooses, to add Hazan and Cohen as parties under Rule 21.

**IV.     Conclusion**

For the foregoing reasons, the Court will defer ruling on Aardvark's motion to dismiss for ten days. On or before December 17, 2018, Bobcar may choose to file either additional submissions responding to Aardvark's reply brief, or a motion to add additional plaintiffs under Rule 21. If Bobcar does not act to cure its standing deficiency within that time, the patent infringement claims in the Second Amended Complaint will be dismissed without prejudice. In the event that Bobcar files additional submissions, Aardvark will have until December 21, 2018 to respond.

SO ORDERED.

Dated: December 7, 2018
       New York, New York

_____
J. PAUL OETKEN
United States District Judge