UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOBCAR MEDIA, LLC,
                    Plaintiff,

          -v-                                        16-CV-885 (JPO)

AARDVARK EVENT LOGISTICS,                            OPINION AND ORDER
INC.,
                    Defendant.

J. PAUL OETKEN, District Judge:

Plaintiff Bobcar Media, LLC ("Bobcar") brings this action against Defendant Aardvark Event Logistics, Inc. ("Aardvark"), alleging claims of patent infringement, trademark infringement, and unfair competition. Now before the Court is Aardvark's motion for sanctions under Federal Rule of Civil Procedure 11. (Dkt. No. 64.) Specifically, Aardvark seeks the dismissal with prejudice of Bobcar's claims for infringement of three design patents, a declaration that the design patents are invalid, and an award of attorney's fees and costs. (*Id.*) For the reasons that follow, Aardvark's motion for sanctions is denied.

I.   **Background**

     A.   **Procedural History**

Bobcar filed the operative Second Amended Complaint in this action on April 20, 2016, alleging patent infringement under 35 U.S.C. § 271, trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under New York law. (Dkt. No. 12 ("SAC") ¶¶ 93–131.) Bobcar bases its suit on six of its patents—three utility patents and three design patents—and, as particularly relevant here, alleges that Aardvark's products "infringe the single claim of each" of the three design patents. (SAC ¶ 43; *see also id*. ¶¶ 9–14, 29.) The Court denied Aardvark's Rule 12(b)(6) motion to dismiss the

1

Second Amended Complaint on January 4, 2017. (Dkt. Nos. 13 & 21.) In its subsequent answer to the complaint, Aardvark asserted counterclaims seeking a declaratory judgment that the six patents on which Bobcar bases its suit are invalid, that Aardvark has not infringed Bobcar's patents or trade dress, and that Aardvark has not engaged in unfair competition. (Dkt. No. 22 at 22–31.)

On May 8, 2018, in the midst of fact discovery, Aardvark filed the instant motion for sanctions against Bobcar under Rule 11. (Dkt. No. 64.) While this motion was pending before the Court, Aardvark moved to dismiss the patent infringement claims for lack of subject-matter jurisdiction. (Dkt. No. 101.) The Court issued an opinion indicating that it was inclined to grant the motion to dismiss, but deferring its ruling to give Bobcar an opportunity to cure the jurisdictional deficiency by demonstrating its standing to assert the challenged claims or by adding plaintiffs with standing to assert those claims. (Dkt. No. 111.) After Bobcar's supplemental submissions failed to adequately do so, the Court granted Aardvark's motion to dismiss and dismissed the patent claims in the Second Amended Complaint without prejudice. (Dkt. No. 117.)

**B.     Factual Background**

The Court presumes familiarity with this matter, as set forth in the Court's prior opinions in this case. *See Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16 Civ. 885, 2017 WL 74729, at *1–3 (S.D.N.Y. Jan. 4, 2017); *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16 Civ. 885, 2018 WL 6437056, at *1–3 (S.D.N.Y. Dec. 7, 2018). The following facts are taken from the operative complaint and the parties' submissions regarding the motion for sanctions.

The patent infringement claims in this case involve three utility patents and three design patents relating to Bobcar's promotional vehicles: U.S. Patent Nos. 7,942,461 ("the '461

patent"); 8,220,854 ("the '854 patent"); 8,690,215 ("the '215 patent"); D652,353 ("the '353 patent"); D678,823 ("the '823 patent"); and D736,675 ("the '675 patent"). (SAC ¶¶ 9–14.) Specifically at issue in this motion are the three design patents—the '353, '823 and '675 patents. They were issued in January 17, 2012; March 26, 2013; and August 18, 2015, respectively,[1] and each claims "the ornamental design for a promotional vehicle." (Dkt. No. 66-4 at 2; Dkt. No. 66-5 at 2; Dkt. No. 66-6 at 2.) Each patent contains several drawn figures demonstrating the claimed design; these figures include solid lines constituting the claimed design, as well as "broken lines" which "are for illustrative purposes only and form no part of the claimed design." (*Id*.)

The claimed design of the '353 patent is fairly extensive, encompassing the structure of the vehicle and its showroom/display area. (*See* Dkt. No. 66-4.) The '823 patent is more limited, covering the shape of the showroom. (*See* Dkt. No. 66-5.) And the '675 patent is similarly limited, covering the sides of the showroom and raised panels. (*See* Dkt. No. 66-6.)

Before the effective filing date of Bobcar's design patent applications, however, Bobcar had used its promotional vehicles in a marketing campaign for Pentax. (Dkt. No. 67 at 4–5.) The campaign featured two Bobcar vehicles "scooting around a 15 mile radius in New York City from mid-October until the end of December" in 2007, "[a]s a form of field marketing" for Pentax. (Dkt. No. 66-7 at 3.) Pentax promoted the marketing campaign in a press release entitled "Pentax BobCar Mobile Showrooms Scoot Around Manhattan." (Dkt. No. 66-7 at 2.) The press release was published on the company's website on October 26, 2007, and it contained

---

[1] All three design patents are continuations-in-part of the March 5, 2009 application for the '461 patent, or are continuations or continuations-in-part of applications that trace back to that earlier application. (Dkt. No. 66-4 at 2; Dkt. No. 66-5 at 2; Dkt. No. 66-6 at 2.) The effective filing date for these patents is thus March 5, 2009, at the earliest. (Dkt. No. 67 at 4.)

3

photographs of the Bobcar vehicles. (Dkt. No. 66-7 at 2–4, 7.) The Pentax marketing campaign was also reported on a photography blog, The Digital Story, on October 30, 2007, in an article titled "Takin' It to the People—The Pentax BobCar," which featured a photograph of one of the vehicles. (Dkt. No. 66-8 at 5.)

After Bobcar filed this action, Aardvark sent Bobcar a letter expressing its view that the three design patents were "clearly invalid in light of Bobcar's own activities, as evidenced by" the Digital Story article. (Dkt. No. 66-10 at 2.) Bobcar responded by disputing the allegations of invalidity. (Dkt. No. 66-11 at 2.) Aardvark contacted Bobcar again regarding its position on invalidity (Dkt. No. 66-12 at 2), and later filed the Rule 11 motion at issue here (Dkt. No. 64).

## II. Legal Standard

Federal Rule of Civil Procedure 11(b) provides in relevant part:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b). "Rule 11(b)(2) 'establishes an objective standard'" of reasonableness for determining whether counsel is presenting a frivolous argument. *Romain v. Seabrook*, No. 16 Civ. 8470, 2017 WL 6453326, at *8 (S.D.N.Y. Dec. 15, 2017) (quoting *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999)). "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or

reverse the law as it stands." *Id.* (alteration in original) (quoting *Simon DeBartolo Grp.*, 186 F.3d at 167).

If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). However, "[e]ven if the district court concludes that the assertion of a given claim violates Rule 11 . . . the decision whether or not to impose sanctions is a matter for the court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *see also Braun ex rel. Advanced Battery Techs., Inc. v. Fu*, No. 11 Civ. 4383, 2015 WL 4389893, at *12 (S.D.N.Y. July 10, 2015) ("[A] finding that Rule 11 has been violated does not compel the imposition of sanctions." (internal quotation marks omitted)).

Courts consider a number of factors "in deciding whether to impose sanctions," including:

> (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern o[f] activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

*Cont'l Cas. Co. v. Marshall Granger & Co.*, No. 11 Civ. 3979, 2017 WL 1901969, at *7 (S.D.N.Y. May 9, 2017) (alteration in original) (second quoting *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 265 (S.D.N.Y. 2009)). In doing so, "courts must remain mindful that the point of Rule 11 sanctions is not to compensate or reimburse the defendants for the totality of their losses, but rather to punish and to deter future similar conduct." *Tantaros v. Fox News Network LLC*, No. 17 Civ. 2958, 2018 WL 1662779, at *3 (S.D.N.Y. Mar. 16, 2018) (internal quotation marks omitted); *see Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) (per curiam) ("Rule 11 is not a fee-shifting mechanism and does not create an entitlement to attorney's fees." (internal quotation marks and citation omitted)).

## III. Discussion

In seeking sanctions under Rule 11, Aardvark contends that Bobcar's three design patents are invalid as anticipated by the prior art, because the claimed invention was disclosed to the public more than one year before the effective filing date of the patent applications. (Dkt. No. 67 at 1–2.)

Patents are presumed to be valid. 35 U.S.C. § 282(a). But an alleged infringer can defend against charges of infringement by arguing that the patents at issue are invalid based on anticipation, *i.e.*, by arguing that disclosures made to the public before the effective filing date of a claimed invention—known as the "prior art"—essentially disclosed the entire invention. *See* 35 U.S.C. §§ 102(a)(1), 282(b)(2). Disclosures made one year or less before the effective filing date by the inventor, or by someone who obtained the subject matter from the inventor, do not count as prior art. 35 U.S.C. § 102(b)(1). So the "critical date"—the date before which an inventor's own disclosures can render its own patent anticipated and thus invalid—is one year before the effective filing date for the patent. *See In re Epstein*, 32 F.3d 1559, 1564 n.5 (Fed. Cir. 1994).

To have a patent declared invalid on grounds of anticipation, an accused patent infringer must demonstrate "by clear and convincing evidence" that the patent was anticipated by the prior art. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1242 (Fed. Cir. 2009). "Anticipation is a question of fact." *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 638 (Fed. Cir. 2015). In the context of design patents, "anticipation requires a showing that a single prior art reference is 'identical in all material respects' to the claimed

invention." *Id*. (quoting *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001)). "In other words, the two designs must be substantially the same." *Id*. This requirement is satisfied where "an ordinary observer . . . would be deceived into thinking that the [prior art] was the same as the patented design." *In re Maatita*, 900 F.3d 1369, 1376–77 (Fed. Cir. 2018) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008) (en banc)); *see Int'l Seaway Trading Corp.*, 589 F.3d at 1237–41 (holding that ordinary observer test for infringement of design patents is also the sole test for anticipation).

Here, Bobcar never challenges Aardvark's contention that the vehicle in the Pentax campaign, the Pentax press release, and the Digital Story article all constitute "prior art" to the design patents. (Dkt. No. 80 at 1.) But the parties dispute whether that prior art was "substantially the same" as the patented designs, *High Point Design*, 621 F. App'x at 638, and whether Bobcar's arguments against invalidity are so objectively unreasonable as to warrant sanctions. The Court first addresses the '353 patent, and then considers the '823 and '675 patents together.

## A. The '353 Patent

In comparing the figures in the '353 patent to the images in the prior art references, the Court notes some obvious differences.[2]




Fig. 1 ('353 Patent)        Fig. 2 (Pentax Vehicle)

First, the cab of the vehicle drawn in the '353 patent is curved and features two windows, whereas the cab of the vehicle in the Pentax campaign is boxy and contains a single window. (Dkt. No. 74 at 17–18.) Second, the chassis of the vehicles underneath their respective showrooms are also different shapes: In the patent, the chassis slopes diagonally down from the cab to the wheel, then diagonally upward from the wheel to the rear. By contrast, the body on the vehicle in the Pentax campaign appears to be parallel to the ground from the cab to the wheel, and parallel to the ground (at a higher level) from the wheel to the rear. (*Compare* Dkt. No. 66-4 at 3, 5–6, 8, *with* Dkt. No. 66-7 at 4.)

---

[2] Figure 1 is from the third sheet of drawings in the '353 patent. (Dkt. No. 66-4 at 5.) Figure 2 is a photograph from the Pentax Press Release. (Dkt. No. 66-7 at 4.) Figure 3 is the final drawing from the '353 patent. (Dkt. No. 66-4 at 8.) Figure 4 is a photograph from the Pentax Press Release. (Dkt. No. 66-7 at 7.)

 

Fig. 3 ('353 Patent)    Fig. 4 (Pentax Vehicle)

Finally, in the showroom itself, the vehicle in the Pentax campaign has a recess at the rear end of the elevated part that is not present in the '353 patent. (Dkt. No. 74 at 12–16.) And the '353 patent includes a cap on the elevated portion on all sides, which is not present on the elevated portion in the Pentax vehicle. (Dkt. No. 74 at 18–19.)

Aardvark responds that the recess is a "minor difference," that "[t]he cab is . . . not a significant part of the invention," and overall that "[t]here are no 'significant' differences between the Prior Art and the '353 Patent." (Dkt. No. 80 at 8–9.)[3] But a reasonable factfinder could see things differently.

In evaluating an anticipation argument, "the ordinary observer test requires consideration of the design as a whole," asking whether the prior art and the patent at issue create the same "overall visual impression." *Int'l Seaway Trading Corp.*, 589 F.3d at 1243. The Federal Circuit has noted that "when the claimed design is close to the prior art designs, small differences . . . are

---

[3] Aardvark attempts to raise new arguments regarding "validity and enforceability" in its reply brief, pointing out that Bobcar's design patents feature a cab built by a different manufacturer that was not named as a co-inventor. (Dkt. No. 80 at 8 & n.11.) Because these arguments were not raised in Aardvark's opening brief, the Court does not consider them. *See Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 141 (2d Cir. 1999) (holding argument to be forfeited where party failed to raise it until reply brief).

9

likely to be important to the eye of the hypothetical ordinary observer." *Id*. at 1240 (quoting *Egyptian Goddess*, 543 F.3d at 676).

Ultimately, in resolving this motion for sanctions, it is not necessary for the Court to determine whether Aardvark has carried its burden of demonstrating by clear and convincing evidence that the '353 patent was invalid as anticipated. It is sufficient for the Court to conclude that, in light of the differences between the Pentax vehicles and the '353 patents, Bobcar has at least a reasonable argument that a factfinder could find that the designs are not "substantially the same." *High Point Design*, 621 F. App'x at 638. As such, Bobcar's claim for infringement of the '353 patent cannot be said to have "no chance of success." *Romain*, 2017 WL 6453326, at *8 (quoting *Simon DeBartolo Grp.*, 186 F.3d at 167). Accordingly, the Court holds that Bobcar did not violate Rule 11(b) in asserting claims of infringement for this design patent.

B. The '675 and '823 Patents

Aardvark also contends that the '823 and '675 patents are invalid, and that Bobcar's assertion of infringement claims as to these patents was frivolous. (Dkt. No. 67 at 12–16; Dkt. No. 80 at 2–6.) As to these two patents, there is a stronger case that there is no reasonable basis for Bobcar's assertion of validity. However, the Court need not ultimately decide whether these patents are invalid for anticipation, or whether Bobcar's claims for their infringement violated Rule 11, because in any event, the Court would deny sanctions. *See Perez*, 373 F.3d at 326 (affirming district court that had declined "to decide definitively whether there had been a [Rule 11] violation because even if there had been, the court would exercise its discretion to deny sanctions").

Looking to the relevant factors, the Court determines that the "extreme measure" of Rule 11 sanctions is not warranted here. *Fleming v. Hymes-Esposito*, No. 12 Civ. 1154, 2013 WL

10

1285431, at *11 (S.D.N.Y. Mar. 29, 2013).[4]  Bobcar's claims of infringement as to the two design patents at issue—'823 and '675—constituted only one third of its patent infringement claims, and did not implicate the Second Amended Complaint's Lanham Act and unfair competition counts.  (*See* SAC ¶¶ 96–97, 106–131.)  Any impropriety in the assertion of the challenged claims thus did not "infect[] the entire pleading." *Cont'l Cas. Co.*, 2017 WL 1901969, at *7 (quoting *Ho Myung Moolsan Co.*, 665 F. Supp. 2d at 265).

Furthermore, the assertion of infringement as to two relatively simple design patents could not have independently added great time and expense to a litigation involving a third, more involved design patent ('353), three utility patents, and trade dress and unfair competition claims. *See id.* (listing the "effect [a Rule 11(b) violation] had on the litigation process in time or expense" as a relevant factor (quoting *Ho Myung Moolsan Co.*, 665 F. Supp. 2d at 265)).  And indeed, the fact that Bobcar's arguments in favor of the validity of one of the three challenged design patents were not frivolous "militates strongly against imposing sanctions" here. *Fleming*, 2013 WL 1285431, at *11.

"[I]t is well settled that the imposition of sanctions is reserved for 'extreme cases.'" *Tantaros*, 2018 WL 1662779, at *3 (quoting *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016)).  The Court concludes that this action is not such an "extreme case."

---

[4] In the event that it prevailed on Aardvark's sanctions motion, Bobcar sought attorney's fees incurred in connection with the motion. (Dkt. No. 74 at 23–25.)  The Court declines in its discretion to award attorney's fees to Bobcar.

## IV. Conclusion

For the foregoing reasons, Aardvark's motion for sanctions is DENIED.

The Clerk of the Court is directed to close the motion at Docket Number 64.

SO ORDERED.

Dated: February 4, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge