UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOBCAR MEDIA, LLC,
                        Plaintiff,

        -v-

AARDVARK EVENT LOGISTICS, INC.,
                        Defendant.

16-CV-885 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Bobcar Media, LLC ("Bobcar") initiated this action on February 4, 2016, against Defendant Aardvark Event Logistics, Inc. ("Aardvark"). (Dkt. No. 1.) In the operative Second Amended Complaint, filed April 20, 2016, Bobcar alleged patent infringement under 35 U.S.C. § 271, trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under New York law. (Dkt. No. 12 ("SAC") ¶¶ 93–131.) Aardvark asserted counterclaims against Bobcar, seeking a declaratory judgment that the six patents on which Bobcar bases its suit are invalid, that Aardvark did not infringe Bobcar's patents or trade dress, and that Aardvark did not engage in unfair competition. (Dkt. No. 22 at 22–31.) On January 14, 2019, this Court dismissed all patent infringement claims for lack of statutory standing. (Dkt. No. 117.) Aardvark has now moved to exclude the expert testimony of James A. Roberts, Ph.D. (Dkt. No. 141), and for summary judgment on all remaining claims (Dkt. No. 142). Bobcar has cross-moved for summary judgment. (Dkt. No. 147.) For the reasons that follow, Aardvark's motion to exclude is granted, Aardvark's motion for summary judgment is granted, and Bobcar's cross-motion for summary judgment is denied.

1

**I.  Background**

Bobcar is a company that owns technology and designs for promotional vehicles. (SAC ¶¶ 8–9.) Created in 2007, Bobcar vehicles "are mobile marketing vehicles used in connection with mobile marketing programs conducted on behalf of brands and/or advertising agencies representing brands." (Aardvark SOF[1] ¶¶ 8–10.) The vehicle has panels that open and close to reveal products promoted in a showroom. (*See* Dkt. No. 148 ("Bobcar SOF") ¶¶ 60–64.) Bobcar has used its vehicles in dozens of campaigns. (Aardvark SOF ¶ 15.) While Bobcar holds four utility and four design patents in connection with the Bobcar, it never registered the trade dress it asserts in this action. (Aardvark SOF ¶¶ 57, 78.)

"Aardvark is an experimental and event mobile marketing firm . . . that provides promotional vehicles." (Aardvark SOF ¶ 42.) Aardvark offers promotional vehicles under the name "Aardy." (Aardvark SOF ¶ 43.) A version of the Aardy was introduced into the marketplace in 2008. (Aardvark CSOF[2] ¶ 131.) The Aardy has also been used in several campaigns. (Aardvark SOF ¶¶ 44–56.) Bobcar asserts that the Aardy is confusingly similar to the Bobcar vehicle, and that it infringes upon its trade dress. (*See* SAC.) On February 4, 2016, Bobcar filed this action. (Dkt. No. 1.)

---

[1] Aardvark's Rule 56.1 Statement of Facts, referred to herein as "Aardvark SOF," was filed under seal in its entirety. Where the Court relies on documents that have been filed under seal, the Court has concluded that the parties' interests in continued sealing of the portions referenced in this Opinion and Order are insufficient to overcome the presumption of public access to judicial documents. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006).

[2] Aardvark's response to Bobcar's Statement of Facts, referred to herein as "Aardvark CSOF," was filed under seal in its entirety. To the extent this Court relies upon it, it is hereby unsealed. *See supra* note 1.

**II.     Motion to Exclude**

    **A.     Legal Standard**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that an expert who is "qualified . . . by knowledge, skill, experience, training, or education may testify" if the testimony would be helpful to the trier of fact, is "based on sufficient facts or data," and is "the product of reliable principles and methods," reliably applied to the facts of the case.  Fed. R. Evid. 702.  And these factors, in turn, largely have their origins in *Daubert*, in which the Supreme Court held that the district court bears a critical gatekeeping function in assessing the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993).

"[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied . . . ."  *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).  Although Rule 702 requires courts to serve an initial gatekeeping function to keep out "junk science," *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013), it is nonetheless "a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions," *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).  However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

    **B.     Discussion**

Bobcar offers Dr. James A. Roberts as a "consumer behavior expert" to opine "on issues relating to [Bobcar's] trade dress and relating to [Aardvark's] infringement thereof by its Aardvark promotional vehicles, and its federal and state unfair competition[, including]

3

likelihood of confusion . . . , secondary meaning, and functionality." (Dkt. No. 141-3 ("Roberts Rep.") ¶ 1.) Aardvark moves to exclude Roberts's expert report on the grounds (1) that Roberts is not qualified to render an expert opinion, (2) that he offers improper legal opinions that go to the ultimate issue in the case, and (3) that his opinions are not based on any recognized or reliable methodology.

*Daubert* presents a two-step inquiry for deciding whether to admit expert testimony. The first question a court poses in conducting the *Daubert* inquiry is "whether the expert has sufficient qualifications to testify." *Davis*, 937 F. Supp. 2d at 412 (citation omitted). If so, the "next question is 'whether the proffered testimony has a sufficiently reliable foundation.'" *Id.* (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)). "The ultimate determination the Court must make on a *Daubert* motion is that the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 127 (S.D.N.Y. 2014) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

As an initial matter, Aardvark does not dispute that Roberts is qualified as a consumer behavior expert — instead, it argues that he is not qualified to render the specific opinions that he offers in his expert report. "Even if 'a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields.'" *LVL XIII Brands v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016) (quoting *Nimely v. City of New York*, 414 F.3d 381, 399 n.13 (2d Cir. 2005)). Roberts was retained to address issues including "likelihood of confusion . . . , secondary meaning, and functionality." (Roberts Rep. ¶ 1.) Aardvark argues that because these concepts require an understanding of legal concepts that Roberts does not possess, he is

unqualified to opine on those issues. However, an expert does not need to be well-versed in the legal terrain to be sufficiently qualified to testify as an expert witness. A consumer behavioral expert is not so irrelevant as to be unqualified to testify to help the jury determine whether there exists likelihood of confusion, secondary meaning, or functionality. And because Roberts has extensive experience as a consumer behavior expert (*see* Roberts Rep. at 37–56), this Court will not exclude Roberts's testimony for lack of qualifications.

However, it is clear that the proffered expert report offers both impermissible legal conclusions and opinions that are not based on any reliable methodology. While an expert opinion "is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), it remains impermissible for experts "to offer opinions embodying legal conclusions." *Floyd v. City of New York*, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012) (quoting *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988)). Further, it is axiomatic that proffered expert testimony must be "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 589–90. Opinions are inadmissible when they are "connected to existing data only by the *ipse dixit* of the expert," or when there is "simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*, 522 U.S. at 146. As discussed below, because each section of the report ultimately draws legal conclusions based on evidence that is seemingly not analyzed in any meaningful way, Roberts's expert report is excluded.

### 1. Trade Dress Opinion

Roberts opines that Bobcar has clearly identified its trade dress, that the claimed trade dress is distinctive, and that Bobcar was the exclusive user of the claimed trade dress when Bobcar introduced its first vehicle in 2007. (*See* Roberts Rep. ¶¶ 25–33). He based these opinions on the pleadings, exhibits attached thereto, this Court's January 4, 2017 Opinion and Order, deposition testimony, and produced documents. (*See id.*)

To the extent that Roberts relies on the pleadings or this Court's prior Opinion and Order, that reliance is misplaced. Neither the pleadings nor this Court's 2017 Opinion and Order are admissible evidence. It is true that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. However it is unlikely, to say the least, that consumer behavior experts reasonably rely on legal documents to come to their conclusions.[3] On that basis alone, all conclusions based on that evidence is excluded.

However, even excluding the opinions that rest on an impermissible basis, the rest of the trade dress section would not assist the jury. Because in his expert opinion Roberts simply "rehash[es] otherwise admissible evidence about which he has no personal knowledge," those observations are inadmissible. *See Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468–69 (S.D.N.Y. 2005). Roberts offers no analysis beyond highlighting aspects of the record that he finds important and demonstrating how it satisfies the legal standards he sets out. Because the jury would be engaging in the same process when assessing Bobcar's claims, this is impermissible *ipse dixit* testimony. *See Gen. Elec. Co.*, 522 U.S. at 146. Accordingly, the trade dress portion of the expert report is excluded.

---

[3] Roberts's reliance on this Court's Opinion and Order is particularly problematic due to Roberts's misunderstanding of this Court's ruling. At the early motion to dismiss stage, this Court assessed whether Bobcar had, *in its complaint*, alleged enough facts to state a claim under the Lanham Act and New York state law. (*See* Dkt. No. 21.) This Court has not yet adjudicated the critical questions in this case, as Roberts seems to erroneously suggest throughout the report. (*See, e.g.*, Roberts Rep. ¶ 44 (claiming that this Court "previously held" that Bobcar's "design features are not essential to the purpose of Bobcar's promotional vehicles" (second quoting Dkt. No. 21 at 14)).)

### 2. Non-Functionality Opinion

Roberts assesses the non-functionality of Bobcar's promotional vehicles with the use of the same categories of materials discussed in Section II.B.1, *supra*, with the addition of a Google search. (Roberts Rep. ¶¶ 34–44.) Roberts notes that "[a] Google search for on-vehicle advertising provides a nearly overwhelming number of alternatives for on-vehicle promotion" and thus concludes that "the Bobcar promotional vehicles are only one of many ways a vehicle can be used as an advertising medium." (Roberts Rep. ¶ 36.) However, it is not beyond the understanding of the average juror that on-vehicle advertising such as "car rooftop advertising," "car and truck decals and stickers," or "bumper stickers" exist. (*See id.*) Therefore, while a Google search itself may be unwieldy to present to the jury, surely the information that there are numerous ways that vehicles can be used to advertise can be effectively conveyed by way of the direct and cross examination of fact witnesses.

And for the same reasons discussed in Section II.B.1, *supra*, Roberts's review of the other evidence is unhelpful to the jury because it contains no analysis beyond that which can be done by the average juror. Accordingly, the non-functionality portion of the expert report is excluded.

### 3. Secondary Meaning Opinion

Roberts assesses whether Bobcar's trade dress has acquired secondary meaning with the use of the same categories of materials discussed in Section II.B.1. (*See* Roberts Rep. ¶¶ 45–83.) And for the same reasons discussed in that section, Roberts's review of the evidence is not more sophisticated than that to be performed by the average juror. The extent of advertising expenditures, positive press, and sales revenues is evident from the face of the documents that Roberts cites. (*See, e.g.*, Roberts Rep. ¶ 54 ("The statements indicate millions of dollars of expenditures on the Bobcar vehicles and their campaigns.").)

Indeed, the only statement that goes beyond the mere application of facts to the law is Roberts's opinion that:

> [Bobcar's] direct engagement is far more effective than simple advertisements or advertising which can more easily be ignored by a consumer or at the periphery of a consumers' [*sic*] consciousness. The use of the brand ambassador brings the consumer into direct contact with the BobCar[ and] brings the BobCar into the forefront of the consumer's consciousness.

(Roberts Rep. ¶ 57.) However, while this analysis could conceivably be within the realm of knowledge of a consumer behavior expert, Roberts does not provide any support for this opinion. Because Roberts has failed to bridge the "analytical gap" between the evidence and his opinion, it does not pass muster. *See Gen. Elec. Co.*, 522 U.S. at 146. Accordingly, the secondary meaning portion of Roberts's opinion is excluded.

### 4. Likelihood of Confusion Opinion

Roberts assesses the likelihood of confusion with the use of the same categories of materials discussed in Section II.B.1. (*See* Roberts Rep. ¶¶ 84–152.) And for same reasons discussed there, Roberts's review of the evidence is not more sophisticated than the analysis of which a lay juror is capable. For example, Roberts notes that after reviewing "hundreds of images from the Aardvark and Bobcar websites" as well as "depositions and exhibits," he came to the conclusion that "[i]t is evident that in the eye of the ordinary consumer, [the] products are extremely similar." (Roberts Rep. ¶ 92.) He offers no analysis other than the fact that he reviewed those materials — materials that presumably jurors would be able to review themselves at trial. (*See id.*) Accordingly, statements like these are inadmissible.

In fact, the only statement in this section that conceivably goes beyond mere application of facts to law in this section is the following: "I am not aware of any documentation of extensive development and design work by Aardvark . . . as one would expect from development of a new promotional vehicle. This further provides a strong inference of copying and bad

faith." (Roberts Rep. ¶ 117.) However, like the statement discussed in Section II.B.3, *supra*, no support is provided for this opinion. Accordingly, the likelihood of confusion portion of the report is inadmissible.

* * *

In sum, because every section of Roberts's expert report is pervaded with impermissible legal conclusions and his opinions are not based on any evident reliable methodology, the report must be excluded in its entirety.

### III. Motions for Summary Judgment

#### A. Legal Standard

Summary judgment under Rule 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of

9

the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted) (second quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).

    **B.**    **Discussion**

Aardvark and Bobcar each move for summary judgment on all of Bobcar's trade dress infringement and unfair competition claims. As an initial matter, a plaintiff must offer "a precise expression of the character and scope of the claimed trade dress." *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 381 (2d Cir. 1997). And to succeed on a claim for trade dress infringement involving the appearance of a product, Bobcar must show that "(1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's good and the defendant's." *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x. 389, 391 (2d Cir. 2003) (summary order). Aardvark argues that Bobcar has met none of the elements to sustain its trade dress infringement claim, and therefore the federal- and state-law unfair competition claims must fall as well. Bobcar argues that it has met each element of its trade dress infringement claim and has additionally proved its unfair competition claims. This Court first considers whether the elements of the trade dress infringement claim are met, then addresses the unfair competition claims.

    **1.**    **Trade Dress Description**

Aardvark argues that Bobcar's description of its trade dress is improperly broad as a matter of law, and therefore its trade dress infringement claim must fail. In the Second Circuit, a plaintiff must articulate the specific elements that comprise its alleged trade dress. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 118 (2d Cir. 2001). Further, a plaintiff must make clear "how they are distinctive." *Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009). Failure to do so "may indicate that its claim is pitched at an improper

10

level of generality, i.e., the claimant seeks protection for an unprotectable style, theme, or idea."
*Landscape Forms, Inc.,* 113 F.3d at 381.

The Court remains unpersuaded that Bobcar's description of its trade dress is not particularized enough to be protected. Bobcar's identification of its trade dress is as follows:

> [A] promotional vehicle having a compact cab in the front, and a compact showroom in back, the showroom having substantially rectangular or square panels on the left and right sides and rear in the closed position, the vehicle having a configuration in which those panels are raised above the showroom and above the height of the front cab in an open position, the showroom being open to the public on three sides when the panels are in the open position, providing an open air showroom which is used to promote goods or services displayed in the showroom, wherein the promotional vehicle includes a colorful front cab and colorful back, including a colorful coordinated theme extending the entire length of the vehicle from front to back and corresponding to the brand or type of goods or services in the showroom, and with the vehicle having advertising or promotional materials on the panels visible in the open and closed positions and corresponding to the brand or type of goods or services in the showroom.

(Aardvark SOF ¶ 76 (alteration in original).) While Aardvark argues that the definition "improperly covers an inordinate number of vehicles with a limitless number of features too numerous to mention" (Dkt. No. 142-1 at 7), any trade dress description can be dissected in that manner and will therefore be at least somewhat susceptible to that issue. Far from being "pitched at an improper level of generality," *Landscape Forms, Inc.,* 113 F.3d at 381, Bobcar's description is quite detailed. Accordingly, this Court concludes that Bobcar has identified a protectable trade dress.

        **2.**     **Secondary Meaning**

Aardvark argues that Bobcar has not shown that its trade dress has acquired secondary meaning, and therefore its trade dress infringement claim fails as a matter of law. "The trade dress of a product attains secondary meaning when the purchasing public associates its design with a single producer or source rather than simply with the product itself." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991) (internal quotation marks and citations

omitted). However, "[t]rade dress generally falls into one of two categories: product packaging or product design." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 537 (S.D.N.Y. 2011). While secondary meaning must be shown for product-design trade dress, it need not be shown for product-packaging trade dress. *See Wal-Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 215 (2000). Bobcar argues that because its trade dress falls into the product packaging category, it does not need to show secondary meaning to prove its trade dress infringement claim. (*See* Dkt. No. 147 at 11–12.) The Court rejects this argument. The reason that product packaging does not typically require a showing of secondary meaning is because its "predominant function remains source identification." *Wal-Mart Stores, Inc.*, 529 U.S. at 212.

This is not the function of the Bobcar. By way of example, the Supreme Court has noted that a Coca-Cola bottle

> may constitute packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors, or part of the product itself for those consumers who buy Coke in the classic glass bottle, rather than a can, because they think it more stylish to drink from the former.

*Wal-Mart Stores, Inc.*, 529 U.S. at 215. Here, the Bobcar is the product. Critically, its customers are not those who might see the Bobcar vehicle on the street, but rather the brands and advertising agencies that secure the use of the Bobcar vehicle for promotional purposes. Those brands and advertising agencies are not interested in purchasing the product that the Bobcar is promoting, unlike the consumer who drinks Coke and discards the bottle. Bobcar's customers are interested in the Bobcar vehicle itself, which makes it unequivocally the product. And even if there is some ambiguity about into which category the trade dress falls, the Supreme Court has held that "courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning." *Id.* Therefore, this Court holds that the trade

12

dress that Bobcar seeks to protect is of the product design variety, and thus it is not exempted from the necessary showing of secondary meaning.

To assess whether a trade dress has acquired secondary meaning, courts consider the following factors: (1) advertising expenditures, (2) consumer studies, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of use. *Coach Leatherware Co.*, 933 F.2d at 169. Bobcar bears the burden to show secondary meaning, and "[p]roof of secondary meaning entails vigorous evidentiary requirements." *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) (citation omitted). Critically, Bobcar must show that its product acquired secondary meaning "before the infringement began." *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826 (Fed. Cir. 1992) (citing *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir. 1980)).

### i. Advertising Expenditures

Advertising expenditures are "indirect evidence of the possible effect that advertising might have on consumers' association of the trade dress with the source of the product." *LVL XIII Brands*, 209 F. Supp. 3d at 654–55 (citation omitted). And it is important to keep in mind that advertising expenditures are of "limited probative value" if the advertising has not "effectively created secondary meaning." *Braun Inc.*, 975 F.3d at 826–27. Bobcar argues that it has spent millions of dollars on its promotional campaigns. (Dkt. No. 147 at 13 (citing Dkt. No. 147-19).) However, this represents its costs in carrying out the Bobcar vehicle promotional campaigns purchased by its customers. The fact that Bobcar lists its website on its vehicles (*see* Dkt. No. 147-49), cannot convert its core functions into advertisements. And while Bobcar offers evidence that it utilizes brand ambassadors, has sponsored at least one event, has issued press releases, advertises on its website and on social media, and has purchased print

advertisements, it offers no evidence showing how much money has been spent on these advertising activities. Accordingly, this factor weighs against Bobcar.

### ii. Consumer Studies

Bobcar has failed to produce any consumer studies to support secondary meaning. (Aardvark SOF ¶ 90.) A consumer survey is not strictly required in this Circuit. *See LeSportsac, Inc. v. K mart Corp.*, 754 F.2d 71, 78 (2d Cir. 1985). However, "[a] consumer survey is the most persuasive element in demonstrating secondary meaning, because such a survey provides direct evidence." *Ergotron, Inc. v. Hergo Ergonomic Support Sys., Inc.*, No. 94 Civ. 2732, 1996 WL 143903, at *8 (S.D.N.Y. Mar. 29, 1996). Bobcar curiously argues that Aardvark could have procured a consumer survey, and thus Aardvark's failure to do so "lead[s] to an inference that it believed a survey would have been unfavorable." (Dkt. No. 147 at 16.) However, it is black-letter law that the *plaintiff* bears the burden of demonstrating secondary meaning. *See Thompson Med. Co.*, 753 F.2d at 217. It was Bobcar's responsibility to procure and marshal any and all evidence to support its trade dress infringement claim. It cannot shift the evidentiary burden of proof onto Aardvark in order to escape its own failure to provide consumer-study evidence. Accordingly, this factor weighs against Bobcar.

### iii. Unsolicited Media Coverage

As evidence of unsolicited media coverage, Bobcar offers ten articles written about the Bobcar vehicle. (*See* Dkt. Nos. 147-25, 147-28 to -36.) The Court cannot evaluate the sufficiency of two of the articles, because Bobcar offers only a photograph of the article rather than the article itself — and the photograph is taken from too far a distance for the words of the article to be readable. (*See* Dkt. Nos. 147-31, 147-33.) Accordingly, these two articles must be excluded from consideration. Three of the articles are about the Pentax campaign's use of the Bobcar vehicle. (*See* Dkt. Nos. 147-25, 147-30, 147-36.) However, the articles that Bobcar

offers do not make it clear that *Bobcar* is the source of the vehicle — indeed they read as if *Pentax* created the vehicle itself. (*See, e.g.*, Dkt. No. 147-25 ("Two Pentax BobCars are scooting around a 15 mile radius in New York City . . . . I'm happy to see [Pentax] trying something innovative to get the word out about their products.").) One article is even entitled "Takin' It to the People – The Pentax Bobcar." (*Id.*) Because this media coverage does not refer to Bobcar as the company that created the vehicle, it cannot support a finding of secondary meaning. *See LVL XIII Brands*, 209 F. Supp. 3d at 658–59.

The remaining five articles offered do discuss Bobcar as the source of the vehicle. (*See* Dkt. Nos. 147-28, 147-29, 147-32, 147-34, 147-35.) Aardvark argues that Bobcar has not shown that this media coverage was unsolicited. *Cf. Nat'l Distillers Prods. Co. v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 481 (S.D.N.Y. 2002) (evidence of media coverage did not favor plaintiff where solicited). And while Aardvark does not offer any evidence that the coverage was not solicited, it is Bobcar's burden to show that it was. It has not done so. And even if it had, none of these articles are from the relevant time period — before the Aardy came onto the market in 2008. *See Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F. Supp. 2d 154, 164 (S.D.N.Y. 1998) (holding that unsolicited media accrued after the date the infringement began "is irrelevant because that is the date upon which [Plaintiff]'s trade dress must have attained secondary meaning") Accordingly, this factor weighs against Bobcar.

      **iv.**    **Sales Success**

Bobcar has earned millions of dollars in revenue from Bobcar vehicle campaigns. (*See* Dkt. No. 147-19.) And while all of that revenue was not accrued by the time that the Aardy went onto the market, campaigns that ultimately brought in over $1 million had begun by 2008. (*Id.*)

15

The volume of sales success here is robust enough such that this factor weighs in favor of Bobcar.

### v. Attempts to Plagiarize the Mark

"Evidence that a mark has been widely copied is persuasive evidence of secondary meaning because it demonstrates that the mark has become a strong source identifier in the eyes of the purchasing public." *Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 428 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). Here, Bobcar presents no evidence of any third-party copying. That alone may be enough for this factor to weigh against Bobcar. *See Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 637 (S.D.N.Y. 2001) ("[S]ave for the copying alleged here, there have been no attempts to plagiarize the . . . trade dress.")

Regarding Aardvark's conduct, the relevant question is whether Aardvark's alleged "copying was done deliberately, so as to benefit from [Bobcar's] name and good will." *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 243 (S.D.N.Y. 2004). Bobcar argues that there is sufficient evidence that Aardvark acted in bad faith and copied the Bobcar, based on (1) the lack of documentation of any research and development on the part of Aardvark; (2) the fact that the Aardy was named after Aardvark, in the same way that the Bobcar vehicle was named after Bobcar the company; (3) evidence that Aardy originally had false "patent pending" designations; and (4) the fact that no intellectual property due diligence was conducted regarding the Aardy. (*See* Dkt. No. 147 at 25–27.) On this record, there is some evidence that Aardvark acted in bad faith. However, this somewhat limited evidence of Aardvark's bad faith, coupled with the absence of evidence that any third party intentionally copied the Bobcar vehicle, does not sufficiently "demonstrate[] that the mark has become a strong source identifier

16

in the eyes of the purchasing public." *Lopez*, 883 F. Supp. 2d at 428 (citation omitted). Accordingly, this factor also weighs against Bobcar.

### vi. Length and Exclusivity of Use

Bobcar argues that its trade dress has been exclusive from July 2007 to present, and therefore the use of its trade dress has been exclusive for over twelve years. (Dkt. No. 147 at 18.) However, the relevant question is the length and exclusivity of the use as of the date that Aardvark entered the market. *See Sports Traveler, Inc.*, 25 F. Supp. 2d at 166. The record is unclear on exactly what date in 2008 the Aardy entered the market. At best, however, the Bobcar enjoyed exclusive use of its trade dress for a year and a half. This is insufficient to constitute evidence of secondary meaning. *See Cicena Ltd. v. Columbia Telecomms. Grp.*, 900 F.2d 1546, 1552 (Fed. Cir. 1990) (holding that use of eighteen months is "evidence point[ing] strongly away from a finding of secondary meaning"). Accordingly, this factor too weighs against Bobcar.

* * *

The only secondary meaning factor weighing in favor of Bobcar is its sales success. And "sales success alone cannot establish secondary meaning." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 284 (S.D.N.Y. 2018) (citation omitted). Therefore, as a matter of law, Bobcar has not produced sufficient evidence that its product acquired secondary meaning "before the infringement began." *Braun Inc.,* 975 F.2d at 826 (citation omitted). Accordingly, Bobcar's trade dress infringement claim must be dismissed.

### 3. Unfair Competition Claims

Bobcar asserts both federal- and state-law unfair competition claims based on the same facts on which its trade dress infringement claim is based. An unfair competition claim under

the Lanham Act requires a showing (1) of a valid trademark entitled to protection under the Act, and (2) that Defendant's actions are likely to cause confusion. *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 524 (S.D.N.Y. 2014) (citation omitted). And under New York law, an unfair competition claim "is subject to the same analysis as [a] Lanham Act claim, except for the additional requirement of bad faith." *Id.* at 525. Because this Court has already held that Bobcar's trade dress is not protectable as a matter of law, its federal- and state-law unfair competition claims are dismissed as well. *See Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 552 (S.D.N.Y. 2003).

## IV. Conclusion

For the foregoing reasons, Defendant's motion to exclude expert testimony is GRANTED. Defendant's motion for summary judgment is GRANTED. Plaintiff's cross motion for summary judgment is DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 141 and 142, to enter judgment on behalf of Defendant, and to close the case.

SO ORDERED.

Dated: April 6, 2020
 New York, New York

_____
J. PAUL OETKEN
United States District Judge